BEA, Circuit Judge,
with whom Circuit Judge GOULD joins, dissenting:
A.
I concur with the analysis in part A of the majority opinion which holds that the “BIA correctly held that Petitioner’s conviction was for ‘a crime for which a sentence of one year or longer may be imposed.’ ” Majority Op. at 778. However, as I previously explained in dissent in Navarro-Lopez v. Gonzales, 503 F.3d 1063, 1084 (9th Cir.2007), this court is bound by Jordan v. De George,[1] the only Supreme *786 Court case that analyzes whether a crime falls into the Immigration and Naturalization Act’s category of “crimes involving moral turpitude.” Jordan v. De George gives us instruction which just does not jibe with the Taylor analysis employed in Navarro-Lopez.
In Navarro-Lopez, this court used the Taylor categorical approach to compare the elements of the California crime of accessory after the fact to “the generic elements of a crime involving moral turpitude.” Navarro-Lopez, 503 F.3d at 1068 (9th Cir.2007). The court then defined the generic elements of a crime involving moral turpitude as involving “conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general” and found that the California crime of accessory after the fact did not fall under this generic definition. Id. at 1068, 1073. The majority now again applies the Navarro-Lopez framework to this case.
I respectfully submit that again the majority’s approach is incorrect. “Vile, base, depraved and violates accepted moral standards” are not the elements of a generic crime for which we can use Taylor. The elements of a generic crime are objectively observable — action, intent, circumstances — not judgments that label such facts. Whether conduct is “depraved” is not objectively observable. Instead, “vile, base, depraved and violates accepted moral standards” is the viewer’s description of crimes bearing the appellation “crimes involving moral turpitude.” This description of the appellation “crimes involving moral turpitude” requires subjective evaluation of the elements of the state statutory crime to determine whether the crime requires conduct which was “depraved” or “contrary to accepted moral standards.”
In the federal criminal law, found in Title 18 of the United States Code, there is no “crime involving moral turpitude.” It would thus be impossible to indict a person for having committed a “crime involving moral turpitude,” quite apart from considerations of unconstitutional vagueness. In a word, a “crime involving moral turpitude” has no elements.
One cannot apply Taylor to compare the elements of a state statutory crime (assault with a deadly weapon) to the description (“vile, base, or depraved and violates accepted social standards”) of an appellation (“crimes involving moral turpitude”). There is no objective matching as is the case when determining if both the federal definition and the state crime involve the same mens rea or the same element of risk of injury to another. Applying Taylor to determine whether a crime involves moral turpitude is like comparing apples (objective elements of a crime) to oranges (subjective evaluation of aspects of a crime). This distinction is precisely why, in De George, the Court ruled that stare decisis is the correct method of determination of what crimes fall into the appellation of “crimes involving moral turpitude.”
Under De George I would look to the weight of federal and state court authority, just as the BIA here did and just as our circuit did in Barber, and find that assault with a deadly weapon is a crime involving moral turpitude. Thus I would deny the petition for review.
B.
The majority holds that on remand the BIA must apply the Taylor categorical approach. However, if I were somehow to apply the Taylor categorical approach, I *787 would do so differently from the majority, but still deny the petition.
“Crimes involving moral turpitude” is a category analogous to the categories of “crimes of violence,” “aggravated felonies,” and “violent felonies.” See Leocal v. Ashcroft, 543 U.S. 1, 3-5, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (crimes of violence)[2]; Kawashima v. Holder, — U.S.-, 132 S.Ct. 1166, 1170-73, 182 L.Ed.2d 1 (2012) (aggravated felonies)[3]; Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 1683, 1687, 185 L.Ed.2d 727 (2013) (“aggravated felonies”)[4]; James v. U.S., 550 U.S. 192, 195, 203-04, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (“violent felonies”).[5] *788 However, for each of these categories Congress either defined the category or gave examples of crimes that fall into the category. Id. But Congress has neither given examples of “crimes involving moral turpitude” nor defined required elements for this category. All we have are judicial decisions which describe which crimes involve moral turpitude. See De George, 341 U.S. at 227, 71 S.Ct. 703.
Thus, if we are to use the Taylor categorical analysis to determine whether California Penal Code § 245(a)(1) is a crime involving moral turpitude, I think we would have to take a two step approach. First, we would have to determine whether there is .a general federal crime of assault with a deadly weapon not including a firearm with which to compare California Penal Code § 245(a)(1). There is no federal statute comparable to § 245(a)(1).[6] That is the first impediment to the use of Taylor. Second, if there were an equivalent federal crime, we would need to search for judicial decisions to determine whether a ease had held that federal crime to be, or not to be, a crime involving moral turpitude. - Again, there is not such a case-even as to the federal crime of assault with a deadly weapon including a firearm, 18 U.S.C.- § 113(a)(3). That is the second impediment against using, the Taylor categorical approach. Absent such precedent as to an equivalent federal crime, I would examine precedent regarding whether equivalent state crimes had been held to be crimes involving moral turpitude, as required by De George, 341 U.S. at 227, 71 S.Ct. 703, and compare the elements of those crimes to the crime in question here, § 245(a)(1). That is more productive. We have already held that § 245(a) is a crime involving moral turpitude,[7] and while the majority finds it “implausible” that this court in Barber discerned the correct mens rea, the majority can point to nothing in the Barber opinion to prove their assumption. Barber, 207 F.2d at 400; Majority Op. at 781. Thus, I would deny the petition.
C.
The majority skips this analysis of previous judicial decisions and simply deter *789 mines that crimes that necessarily include conduct which it finds is “vile, base, or depraved and against accepted social standards” fall into the category of “crimes involving moral turpitude.” This approach ignores De George, is impossible to apply objectively, and is not binding on the BIA because the Ninth Circuit is defining a category left undefined in the INA by Congress. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (“If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.”). Thus, on remand, if the BIA cannot find that an equivalent federal or state crime of assault with a deadly weapon has been held, or not held, to be a crime involving moral turpitude, it can create its own definition of a crime involving moral turpitude for purposes of the INA.

. In Jordan v. De George, 341 U.S. 223, 224-25, 71 S.Ct. 703, 95 L.Ed. 886 (1951), De George was an alien twice found guilty of conspiring to defraud the United States of taxes due on alcoholic beverages and was ordered deported for twice having committed a “crime involving moral turpitude,” each carrying a sentence of imprisonment of over one year. The U ordered De George to be deported and the BIA affirmed. Id. at 226, 71 S.Ct. 703. De George filed a federal habeas petition, claiming the crimes did not involve moral turpitude. Id. The district court denied the petition. Id. The Court of Appeals for the Seventh Circuit reversed, finding that crimes involving moral turpitude were meant only to include crimes of violence, not evading taxes on alcohol. Id. at 226, 71 S.Ct. 703. The Supreme Court granted certiorari and reversed. The Court stated:
In deciding the case before the Court, we look to the manner in which the term “moral turpitude” has been applied by judicial decision. Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude. In the construction of the specific section of the Statute before us, a court of appeals has stated that fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude.
Id. at 227, 71 S.Ct. 703. The Court supported its holding that a crime involving fraud also involves moral turpitude by surveying federal and state cases. Id. It found that in every deportation case where fraud had been proved — including the crimes of forgery, using the mails to defraud, execution of chattel mortgage with intent to defraud, concealing assets, issuing checks with intent to defraud— the court had held involved moral turpitude. Id. at 227-29, 71 S.Ct. 703. Further, the Court found that two courts of appeal had previously held that the crime in question had been held to be a crime involving moral turpitude. Id. at 228, 71 S.Ct. 703. The Court concluded:
in view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude. It is therefore clear, under an unbroken course of judicial decisions, that the crime of conspiring to defraud the United States is a 'crime involving moral turpitude.’
*786 Id. at 229, 71 S.Ct. 703.

. In Leocal v. Ashcroft, a Haitian citizen who was a lawful permanent resident of the United States was convicted of driving under the influence of alcohol (DUI) and causing serious bodily injury under Florida law and sentenced to 2.5 years in prison. 543 U.S. 1, 3-4, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). The INS initiated removal proceedings against him pursuant to INA § 237(a), which states that any alien who is convicted of an "aggravated felony" may be removed. Id. at 4, 125 S.Ct. 377. Section 1101(a)(43) of the INA defines "aggravated felony” as including a "crime of violence.” Id. at 4-5, 125 S.Ct. 377. A "crime of violence” is defined in 18 U.S.C. § 16. The immigration judge found that a Florida DUI offense was a crime of violence. Id. at 5, 125 S.Ct. 377. The BIA affirmed. Id. at 5, 125 S.Ct. 377. The Eleventh Circuit denied Leocal’s petition for review. Id. The Supreme Court granted certio-rari and reversed. Id. at 6, 125 S.Ct. 377. The Court examined the statute and held that a violation of Florida’s DUI statute is not a crime of violence. Id. at 10, 125 S.Ct. 377.

. In Kawashima v. Holder, a husband and wife from Japan who were lawful residents of the United States pleaded guilty to submitting a false tax return. -U.S. -, 132 S.Ct. 1166, 1170, 182 L.Ed.2d 1 (2012). Following the convictions, the INS charged the Kawa-shimas with being deportable as aliens who had committed an aggravated felony. Id. In the INA, “categories of offenses that qualify as 'aggravated felonies’ for the purpose of deportation" include an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000 or is a tax evasion in which the revenue loss to the Government exceeds $10,000.” Id. at 1171. The IJ ordered the couple’s removal, and the BIA affirmed. Id. On appeal, the Ninth Circuit held that Kawashimas had both committed an aggravated felony, granted the petition, and remanded the case to the BIA. Id. The Supreme Court granted certiorari and affirmed the Ninth Circuit. The Court used a categorical approach and found that the tax crime involved fraud or deceit. Id. at 1173.

. Adrian Moncrieffe was a Jamaican citizen who came to the United States illegally. Moncrieffe v. Holder,-U.S.-, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013). Mon-crieffe was convicted under a Georgia statute for possession of drugs. Id. Subsequently, DHS started deportation proceedings, arguing that the Georgia conviction constituted an "aggravated felony.” Id. at 1682. The INA defines an "aggravated felony” as including "illicit trafficking in a controlled substance.” Id. at 1683. An IJ ordered Moncrieffe removed. Id. The BIA affirmed. Id. The Eleventh Circuit denied Moncrieffe’s petition for review, finding that the Georgia statute was equivalent to a federal drug felony. Id. The Supreme Court granted certiorari and reversed. Id. The Supreme Court applied the categorical approach, noting that this "categorical approach has a long pedigree in our Nation’s immigration law.” Id. at 1685. But the Court also stated that the categorical approach applies to "generic crimes.” Id. at 1691. The court compared the Georgia crime with the generic crime of "illicit trafficking in a controlled substance” and found that Mon-crieffe was not convicted of an aggravated felony. Id. at 1687.

. Alphonso James pleaded guilty to one count of possessing a firearm after being convicted of a felony. James, 550 U.S. at 195, 127 S.Ct. 1586. James had three prior felony convictions including a Florida conviction for attempted burglaiy. Id. at 196, 127 S.Ct. 1586. The district court held that attempted burglary was a violent felony and James was subject to a mandatory sentence under the Armed Career Criminal Act. Id. The Eleventh Circuit affirmed. Id. The Supreme Court granted certiorari. Id. The Supreme Court held that a *788 "violent felony” is defined by 18 U.S.C. § 924(e)(1) as a crime "that has as an element the use, attempted use, or threatened use of physical force against the person of another or is burglary, arson, extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” Id. at 196, 127 S.Ct. 1586. The Court applied the Taylor categorical approach and found that the Florida crime of attempted burglary posed a serious risk of physical injury to another. Id. at 204, 127 S.Ct. 1586.

. Title 18 U.S.C. § 113(a)(3) codifies assault with a deadly weapon, but includes firearms, unlike California Penal Code § 245(a)(1) which excludes firearms.

. The majority overrules Barber because Barber relies on four federal cases for the proposition that assault with a deadly weapon is a crime involving moral turpitude under federal law and "the fact that other assault statutes qualify under the federal definition is, today, insufficient to establish that the assault statute at issue necessarily qualifies.” Majority Op. at 781. It is true that the court in Barber did not compare the elements of § 245 to the elements of the federal cases it cited. Rather, in Barber we considered that, “[hjere we are faced with the federal question of whether the crime involves such moral turpitude as to show that the alien has a criminal heart and a criminal tendency — as to show him to be a confirmed criminal.” That question is similar to the one the majority asks today. Further, if this court overrules all moral turpitude precedent prior to 1990, when the Supreme Court decided Taylor, because the cases did not compare elements of two crimes as required by Taylor, there will be no guideposts by which to judge what crimes qualify under the common-law term "moral turpitude.” We cannot do that consistent with Jordan v. De George, supra.